No. 23,120.

THE STATE OF KANSAS, *Appellee,* v. ANTHONY E. KIPERS,
*Appellant.*

### SYLLABUS BY THE COURT.

1. RAPE—*Insufficient Application for Continuance.* In a criminal action,
   a verified application for a continuance on account of the absence of a
   witness failed to show to what the witness would testify. In a supple-
   mental oral application afterward made, the evidence of the absent
   witness was set out, but the supplemental application was not sworn
   to nor verified. *Held,* that it was not error to deny a continuance.

2. SAME—*Evidence—Child May Be Exhibited to Jury.* In a prosecution
   for rape by carnally and unlawfully knowing a female under the age
   of eighteen years, it is not error to permit the child begotten by the
   unlawful intercourse to be exhibited to the jury where the child, at the
   time it is so exhibited, is more than one year old.

3. SAME—*Evidence—Certified Copy of Birth Certificate.* It is not re-
   versible error to admit in evidence a certified copy of a certificate of
   birth made by an attending physician where he on the stand testifies
   that he obtained from the defendant in a conversation with him all the
   information from which the facts stated in the certificate were de-
   rived, and details the conversation which, if the testimony is true, es-
   tablishes the facts stated in the certificate.

4. SAME—*Venue—Sufficiently Shown to Be in Butler County.* There was
   evidence sufficient to justify the jury in finding that the offense had
   been committed in Butler county.

Appeal from Butler district court; ALLISON T. AYRES, judge.
Opinion filed October 8, 1921. Affirmed.

37—109 KAN.

*Charles W. Steiger, B. R. Leydig, K. M. Geddes,* and *E. W. Grant,* all of El Dorado, for the appellant.

*Richard J. Hopkins,* attorney-general, *R. T. McCluggage, Arch F. Williams,* county attorneys, and *Stanley C. Taylor,* deputy county attorney, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The defendant appeals from a conviction for rape by carnally and unlawfully knowing a female under the age of eighteen years.

1. It is urged that the court committed error in refusing to grant a continuance on the application of the defendant. The action had been twice tried; each trial had resulted in a failure of the jury to agree upon a verdict. The trial which resulted in a conviction, commenced on March 4, 1920. On that day the defendant presented an application for a continuance on the ground of the absence of Mrs. John Kipers, who had been subpœnaed, but who at the time was sick and unable to attend. That application was verified, but it was denied. Mrs. John Kipers and Lola Kipers had been witnesses on one or the other or both of the former trials. The evidence of Mrs. John Kipers given at a former trial was read to the jury. The plaintiff by leave of court, over the objection of the defendant, endorsed the names of certain witnesses on the information. The defendant then orally renewed his application for a continuance and stated as an additional ground therefor that Lola Kipers, who had been subpœnaed, could not attend on account of the sickness of her eight months' old child, and that the testimony of this witness was desired to refute the testimony of witnesses whose names had been on that day endorsed on the information. The statements in the renewed application were not sworn to nor verified, and the application was again denied. The plaintiff then made its trial statement at the conclusion of which the following transpired.

"By Attorney Geddes for defendant: In view of the statement of the attorney for the state, the defendant now asks leave to add a statement of what the witness Lola Kipers would testify to if present, such statement to be added to the application of the defendant for a continuance. This statement goes in as additional grounds for a continuance; that the witness Lola Kipers would testify, if present, that the information given

to the attending physician with reference to the paternity of the child was given by her and not by the defendant, Anthony Kipers.

"By the Court: That goes in as a part of the other application, and there is no need of any further ruling on it.

"By Attorney Geddes: No need of any further ruling."

On the trial the attending physician testified that he obtained information as to the paternity of the child from Anthony Kipers, the defendant. The testimony of Lola Kipers given at a former trial was read to the jury. Neither of the first two applications presented the evidence of the absent witness in such a form that it could be read as the deposition, and the last one was not sworn to nor verified. Continuances in criminal actions are granted "for like causes and under the like circumstances as in civil cases." (Crim. Code, § 210.) In civil actions an application for a continuance on the ground of the absence of evidence must be made by affidavit, must show the materiality of the evidence expected to be obtained, and must show what the applicant believes "the witness will prove." "If thereupon the adverse party will consent that on the trial the facts alleged in the affidavit shall be read and treated as the deposition of the absent witness, or that the facts in relation to other evidence shall be taken as proved to the extent alleged in the affidavit, no continuance shall be granted on the ground of the absence of such evidence." (Civ. Code, § 315.)

None of the applications complied with the statute, and for that reason it was not error for the court to refuse to grant a continuance.

2. The person against whom the crime is alleged to have been committed was Hazel Belle Kipers. She gave birth to a child on December 30, 1918, and died a few days thereafter. The trial occurred more than a year after the birth of the child. It was exhibited to the jury over the objection of the defendant, who urges that as error. Although there is a sharp division of the authorities on the subject, this court has declared that a child may be exhibited to a jury for the purpose of establishing paternity in bastardy cases. (*The State, ex rel., v. Browning,* 96 Kan. 540, 152 Pac. 672.) Why the same thing cannot be done in a rape case is not readily perceived. Many authorities state that it can be properly done, although again there is a conflict in the decisions. (22 R. C. L. 1202; 33 Cyc. 1477.)

3. A certified copy of the birth certificate as it was on file with the board of health of the state of Kansas was introduced in evidence, and was presented by L. P. Kissler, an officer from the board of health, who testified that it was an exact copy of the original certificate on file. The introduction of that certificate is urged as error. The attending physician testified that he made out the certificate, that he obtained from the defendant the information from which he made out the certificate, and detailed the conversation in which the information was given. The abstract discloses the following:

"By the Court: Tell the jury what information he gave you. A. Well, I asked him what township and he said Murdock. And I asked him his full name and he said Anthony E. Kipers; residence, Benton; color, white; age at last birthday, 31; birthplace, Potomac, Ill.; occupation, farming. I filled this in. It says: Number in order of births and I put it number 1. I do not know whether that was correct or not, but it was the first child by this mother and the full maiden name of the mother was Hazel Halsey; residence, Benton; age at last birth, 19; birthplace, Douglass, Kansas.

. . . . . . . . . . . . .

"By the Court: Did the defendant say anything to you about who was the father of this child? A. We did not discuss that at all.

"Q. Nothing said about that at all? A. Only the first question that I asked him before I filled this out.

"Q. What was that first question? A. I asked him if he was married. And he said yes, and then he gave me his name as father of the child."

If the certificate was improperly admitted in evidence the testimony of the attending physician rendered immaterial any error that had been committed in its admission.

4. It is urged that the court committed error in overruling the defendant's demurrer to the plaintiff's evidence. It has often been said that a demurrer to the evidence is not proper in criminal cases. The question that the defendant urges under this head is that there was no evidence to prove that the offense had been committed in Butler county. There was no direct evidence as to the commission of the offense; the evidence was either circumstantial or was contained in admissions of the defendant. The defendant and his children and Hazel Belle Kipers lived in the same house at the defendant's home in Butler county. The mother of the defendant had adopted Hazel Belle Kipers when the latter was a small child, and she had been raised in the family with the defendant and three other boys. The husband of the adopting mother had died, and the

mother had remarried. The defendant and his family, consisting of a wife and some children, had moved from Chicago to the home of his mother in Butler county, where his wife died. After the death of his wife his family consisted of his children and his adopted sister. The wife of one of the brothers of the defendant lived with him a part of the time.

At the time of the birth of the child the members of the family of the defendant were sick with the "flu," and he had difficulty in getting any of the neighbors to render any assistance. The testimony of one witness, a neighbor, as set out in the abstract was in part as follows:

"I saw him again that night at my house; he came over after some milk. I asked him how they were and he said they were pretty sick and he said if someone would go in there and cook for them, that the kids were starving and nobody said nothing. When he went away or just before he went away he said that he guessed they could lay there and kick the bucket. I told him, I says, Now, Tony, if this is a confinement we will go in and help you and do all we can, but if it is the flu we do not want to run into it. He said nothing. Mrs. Wilson and I went over about 8 o'clock; we did not go in the house at first. I talked with Tony; I said, Now, Tony, you have got to come across, and I said if it is a confinement case, we will go in and help, but if it is the flu we do not want to run into it, and he says it is not time for anything like that yet. He wanted me to get someone to go in there and I went to George Pitcher's and my wife and I and Bertha Pitcher went back to the Kipers home and went into the house; this was about half past 9; I went into the kitchen and the women went into the room where Hazel was. Anthony said he wanted me to get a doctor We were in the kitchen at the Kipers home when that conversation took place. I went to Mr. Phares and got Dr. Hurd at Benton but he did not come out. I went back to the house and the baby had been born. At that time I had a conversation with Kipers, and I says, Tony, you know that you ought not to have done this, and he says, why, and he says, we are married, and I thought then it was none of my business."

Another witness testified to hearing a statement made by the defendant at a place where threshing was being done, in which the defendant in substance stated that he was having illicit intercourse with some one, not named, at his home. The defendant denied making these statements, but the evidence of the witnesses who testified concerning them, and the undisputed evidence concerning the place of residence of the defendant's family, and his relationship to them, justified the jury in finding that the offense was committed in Butler county.

The judgment is affirmed.